# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALLEN PRICE
1554 State Route 235
Millmont, PA 17845

          Plaintiff

      v.

GOOD SPORTSMAN MARKETING, LLC
5250 Frye Road
Irving, TX 75061

      and

GSM, LLC
5250 Frye Road
Irving, TX 75061

      and

GSM OUTDOOR HOLDINGS, L.P.
360 N. Crescent Drive, South Building
Beverly Hills, California 90210

      and

WAL-MART STORES EAST, LP
1 Customer Drive
Bentonville, AR 72712,
        Defendants

CIVIL ACTION No. 4:25-CV-02169

JURY TRIAL DEMANDED

Plaintiff does not claim right of relief in the form of any punitive or exemplary damages, or statutory or civil penalties.

1

## CIVIL ACTION – COMPLAINT

1. Plaintiff, Allen Price, is an adult individual and resident of the Commonwealth of Pennsylvania, residing therein at 1554 State Route 235, Millmont, Pennsylvania 17845.

2. Defendant **Good Sportsman Marketing, LLC** is a Delaware limited liability company with a principal place of business located at 5250 Frey Road, Irving, Texas 75061.

3. Defendant Good Sportsman Marketing, LLC is registered to do business in Pennsylvania with a registered address at 100 Cabela Drive, Hamburg, Pennsylvania 19526.

4. At all times relevant and material hereto, Defendant Good Sportsman Marketing, LLC was acting individually and/or by and through its agents, employees, and/or representatives, who themselves were acting within the course and scope of their employment, service, and/or agency.

5. Defendant Good Sportsman Marketing, LLC conducts substantial, regular, and continuous business in the Commonwealth of Pennsylvania.

6. Defendant **GSM, LLC** is a Delaware limited liability company with its principal place of business located at 5250 Frey Road, Irving, Texas 75061.

7. At all times relevant and material hereto, Defendant GSM, LLC was acting individually and/or by and through its agents, employees, and/or

representatives, who themselves were acting within the course and scope of their employment, service, and/or agency.

8.    Defendant GSM, LLC conducts substantial, regular, and continuous business in the Commonwealth of Pennsylvania.

9.    Defendant **GSM Outdoors Holdings, L.P.** is a limited partnership organized and existing according to the laws of Delaware, with its principal place of business located at 360 N. Crescent Drive, South Building, Beverly Hills, California 90210.

10.    At all times relevant and material hereto, Defendant GSM Outdoors Holdings, L.P. was acting individually and/or by and through its agents, employees, and/or representatives, who themselves were acting within the course and scope of their employment, service, and/or agency.

11.    Defendant GSM Outdoors Holdings, L.P. conducts regular and continuous business activities in the Commonwealth of Pennsylvania.

12.    Upon information and belief, Defendants Good Sportsman Marketing, LLC, GSM, LLC, and GSM Outdoors Holdings, L.P. are related and/or affiliated entities collectively doing business as "GSM Outdoors".

13.    Defendants Good Sportsman Marketing, LLC, GSM, LLC, and GSM Outdoors Holdings, L.P. may hereinafter be collectively referred to as "Defendants GSM". Allegations directed to Defendants GSM shall be construed to apply to

Defendants Good Sportsman Marketing, LLC, GSM, LLC, and GSM Outdoors Holdings, L.P. individually as though set forth at length separately against each such individual Defendant.

14.    At all times relevant and material hereto, Defendants GSM were in the business of designing, producing, manufacturing, distributing, packaging, selling, and/or otherwise supplying various outdoor sporting goods, shooting sports, and hunting products including wildlife feeders, hunting knives, hunting stands, and related accessories.

15.    At all times relevant and material hereto, Defendants GSM had extensive, continuous, regular, and systematic business contacts with the Commonwealth of Pennsylvania, by regularly advertising, marketing, distributing, and selling their products both directly to consumers in Pennsylvania through its website and other online third-party retailers, as well as at various brick-and-mortar retail stores located in the Commonwealth of Pennsylvania.

16.    At all times relevant and material hereto, Defendants GSM's business involved designing, manufacturing, assembling, fabricating, distributing, packaging, marketing, and selling consumer outdoor sporting, shooting, and hunting equipment and products under various brand names including Muddy, Boss Buck, Stealth Cam, Walker's, Cold Steel, Birchwood Casey, Ameristep, Halo Optics, American Hunter, Apex Gear, and Big Game Treestands, among others.

17.    At all times relevant and material hereto, Defendants GSM distributed and sold its outdoor sporting and hunting equipment to consumers in the Commonwealth of Pennsylvania, including major retail stores with brick-and-mortar locations in the Commonwealth of Pennsylvania, including stores operated by Cabela's, Walmart, Bass Pro Shops, and Tractor Supply Co.

18.    Defendant **Wal-Mart Stores East, LP** ("Walmart") is a limited partnership organized and existing according to the laws of Delaware with a principal place of business located at 1 Customer Drive, Bentonville, Arkansas 72712.

19.    Defendant Walmart regularly and continuously conducts substantial business activities in Pennsylvania by distributing, selling, supplying, advertising, and marketing products and services to consumers in this Commonwealth, and by employing persons in Pennsylvania in furtherance of its business activities.

20.    Defendant Walmart is registered to do business in Pennsylvania.

21.    Defendant Walmart owns, operates, maintains, and manages over one hundred (100) brick-and-mortar retail stores in the Commonwealth of Pennsylvania, including Walmart Store #1644 located at 120 AJK Boulevard in Lewisburg, Pennsylvania.

22.    Defendant Walmart also owns, operates, and maintains numerous distribution warehouse facilities in the Commonwealth of Pennsylvania.

23.    Defendants GSM, both individually and collectively, regularly and continuously conduct substantial business activities within the Commonwealth of Pennsylvania by marketing, advertising, and selling their products directly to consumers through online retail sales platforms and at brick-and-mortal retail stores and distributors located therein.

24.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that complete diversity of citizenship exists between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

25.    Venue is proper as to this District Court under 28 U.S.C. § 1391(b), as Defendants are subject to this district's personal jurisdiction by engaging in substantial business activities in Pennsylvania, engaging in acts or omissions causing injuries to persons in Pennsylvania, including Plaintiff, and by selling products which they knew would be used in this Commonwealth.

26.    Venue is proper as to this District Court under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to this cause of action occurred in this judicial district, including Plaintiff's injuries of December 8, 2023 which took place while hunting in Bald Eagle State Forest in Union County, Pennsylvania.

27.    At all times relevant hereto, Defendants GSM's regular business involved manufacturing, developing, selling, and distributing outdoor sporting and

hunting goods and accessories to consumers, including tree stands and free-standing hunting stands under the registered trade name "Muddy".

28.    Prior to December 8, 2023, and at all times relevant hereto, Defendants GSM owned and operated the website domain name "gomuddy.com", an online retail platform for the purpose of advertising, marketing, and selling "Muddy" brand hunting stands to consumers.

29.    At all times relevant hereto, Defendant Walmart was engaged in the business of selling and supplying consumer goods, including Defendants GSM's "Muddy" brand hunting stands to consumers through its online retail store, Walmart.com, as well as at brick-and-mortar retail stores.

30.    Prior to December 8, 2023, Defendants GSM designed, manufactured, fabricated, packaged, assembled, distributed, and otherwise sold to Defendant Walmart a "Muddy" brand 13-foot "Horizon" tripod hunting stand, Model No. MUD-MXM (Batch No. 4M-0621) (hereinafter "subject hunting stand") with the expectation that it would be purchased by consumers for personal and recreational use.

31.    In or around December 2022, the subject hunting stand was purchased from Defendant Walmart's Store #1644 by the daughter of Plaintiff's girlfriend as a Christmas present for Plaintiff (UPC No. 00888151024843, Item No. 661420967).

32.    Walmart Store #1644 is located at 120 AJK Boulevard, Lewisburg,

Pennsylvania 17837.

33.     As described, marketed, packaged, and advertised by Defendants GSM, the subject hunting stand is a 13' tripod-style hunting stand suitable for bow and rifle hunting.

34.     As designed, manufactured, marketed, distributed, sold, and supplied by Defendants GSM and Walmart, the subject hunting stand consists of a 10-foot tripod base and a 36-inch diameter platform with a swivel chair and is intended to be used by consumers as an elevated seat from which to observe and hunt wild game.

35.     As designed, manufactured, distributed, packaged, and sold by Defendants GSM and Walmart, the subject hunting stand was supplied partially assembled.

36.     As designed, manufactured, and supplied by Defendants GSM and Defendant Walmart, the subject hunting stand had a pre-assembled welded connection between the seat post and seat of the hunting stand.

37.     On December 8, 2023, Plaintiff went hunting in an area off Hoofnagle Road in Bald Eagle State Forest and was attempting to dismount the hunting stand when the seat post connection suddenly failed and detached, causing Plaintiff to fall to the ground and suffer serious and painful injuries described in further detail below.

38.     At the time Defendants GSM and Walmart designed, manufactured, fabricated, distributed, and/or sold the subject hunting stand, Defendants GSM and

8

Walmart knew, understood, and appreciated that it was necessary to design, manufacture, fabricate the subject hunting stand such that it was safe and free of defects posing risk of serious injury to end users.

39.    At the time the subject hunting stand was designed, manufactured, and/or sold, Defendants GSM and Walmart knew or should have known that the subject hunting stand posed an unreasonable risk of severe bodily injury to individuals based upon the product's design and/or lack of suitable materials and construction rendering it unsafe for its intended use as a consumer recreational hunting stand.

40.    As designed, manufactured, fabricated, sold, and/or supplied by Defendants GSM and Defendant Walmart, the subject hunting stand seat post and seat had improper welds making it subject to premature deterioration and failure.

41.    As designed, manufactured, fabricated, packaged, sold, and supplied by Defendants GSM and Defendant Walmart, the subject hunting stand lacked any fall arrest system.

42.    As a direct, factual, and proximate result of the defective design, unsafe, and unreasonably dangerous condition of the subject hunting stand, as sold and supplied by Defendants GSM and Defendant Walmart, and the negligence and breaches of warranties by all Defendants as further described herein, Plaintiff was caused to suffer severe and painful injures and damages, including but not limited to

the following:

a. Physical injuries to his body including to his lumbar spine and thoracic spine, fractured tail bone, neuropraxia of lower extremity, disc bulges at multiple levels, injury to the coccyx, with pain, paresthesia, and numbness radiating to his lower extremities, lumbrosacral radiculopathy, sciatica, injuries to his lower extremities, and related symptoms and sequalae;

b. Hospital, medical, and rehabilitative expenses, past, present, and future;

c. Loss of earnings, past and future, and loss of earning capacity;

d. Conscious physical pain and suffering;

e. Disfigurement, scarring, embarrassment, and humiliation;

f. Emotional suffering and mental anguish;

g. Loss of quality of life past, present, and future;

h. Loss of enjoyment of life's pleasures past, present, and future.

43. At all times relevant and material hereto, Plaintiff was acting with due care for his personal safety and wellbeing and using the subject hunting stand in a reasonable manner and for the purpose for which the subject hunting stand was designed, manufactured, and sold.

## COUNT I – NEGLIGENCE
## PLAINTIFF v. DEFENDANTS GSM, LLC, GOOD SPORTSMAN MARKETING, LLC, AND GSM OUTDOORS HOLDINGS, L.P.

44. Plaintiff repeats and incorporates by reference all preceding paragraphs with the same force and effect as if set forth herein at length.

45. Prior to December 8, 2023, Defendants GSM designed, manufactured, packaged, supplied, and sold the subject hunting stand, causing it to be placed into the stream of commerce to be purchased by consumers for personal use.

46. At all times relevant and material hereto, Defendants GSM, having undertaken to design, manufacture, produce, package, advertise, assemble, market, distribute, and sell the subject hunting stand, had a duty to exercise reasonable care in the design, manufacture, testing, inspection, packaging, marketing, distribution, and sale of the subject hunting stand such that it would be reasonably safe for its intended uses and reasonably foreseeable uses.

47. In designing, manufacturing, selling, and supplying the subject hunting stand to be used by consumers, Defendants GSM knew that they should never needlessly endanger users of the subject hunting stand.

48. In supplying and selling the subject hunting stand for personal use by consumers, Defendants GSM had a responsibility to ultimate users of the hunting stand, to reduce or eliminate potential hazards of the subject product to the greatest extent reasonably possible.

49. In designing, manufacturing, testing, packaging, marketing, and selling the subject hunting stand, Defendants GSM knew that supplying an elevated hunting stand with improper welded connections would expose consumers such as Plaintiff to an unreasonable risk of serious bodily injury.

11

50.     Prior to designing, manufacturing, testing, packaging, marketing, distributing, and selling the subject hunting stand, Defendants GSM knew that ultimate users would be exposed to unreasonable risk of bodily injury in the event there were defects in the stand's welded connections, design, or fabrication that could lead to the seat post connection failing and detaching from the base.

51.     In designing, manufacturing, testing, packaging, marketing, distributing, and selling the subject hunting stand, Defendants GSM knew or should have known it would be necessary to exercise reasonable care in manufacturing, designing, testing, and fabricating the subject hunting stand to ensure that it was safe and adequate for its expected and intended use(s) as a hunting stand to observe and hunt wild game.

52.     At all times relevant and material hereto, Defendants GSM knew that it was important to supply the subject hunting stand with adequate warnings, product safety information, and/or instructions to prevent or reduce, to the greatest extent possible, the likelihood of serious bodily harm or injury to consumers such as Plaintiff.

53.     Prior to selling and supplying the subject hunting stand, Defendants GSM knew and recognized that the failure to adequately and properly manufacture and fabricate the hunting stand, including all welded connections, would present an unreasonable risk of bodily harm to consumers such as Plaintiff.

54. Defendants GSM had no reason to believe or expect that ultimate users of the subject hunting stand would recognize or appreciate the unreasonably dangerous condition of the product as sold and supplied by Defendants.

55. In undertaking to design, manufacture, distribute, package, and sell the subject hunting stand, Defendants GSM had a duty to exercise reasonable care in the inspection, testing, and quality control of the product so as to reduce or eliminate the risk of serious injury to consumers as a result of ordinary, intended, and foreseeable use of the product to the fullest extent possible.

56. In undertaking to design, manufacture, distribute, and sell the subject hunting stand, Defendants GSM knew it would be necessary to design, manufacture, and supply the product in a safe condition such that it was capable of withstanding normal and anticipated use by consumers such as Plaintiff.

57. Notwithstanding, Defendants GSM supplied the subject hunting stand in an unreasonably dangerous and defective condition in that it failed to protect users, including Plaintiff, from suffering serious bodily injury when the subject hunting stand's seat post connection failed after minimal and ordinary use.

58. The aforementioned injuries and damages suffered by Plaintiff, as set forth above, were directly, factually, and proximately caused by the negligence, carelessness, and wrongdoing of Defendants GSM, including the following conduct, acts, and/or omissions:

a. Failure to exercise reasonable care in designing, manufacturing, assembling, testing, inspecting, packaging, marketing, distributing, selling, and/or otherwise supplying the subject hunting stand such that it was in a safe condition for ultimate consumers;

b. Designing, manufacturing, packaging, producing, distributing, selling, and/or otherwise supplying the subject hunting stand in a defective and/or unreasonably dangerous condition;

c. Failure to exercise reasonable care in testing and inspecting the subject hunting stand for quality control, safety, and consistency with internal product standards for products of a similar kind manufactured and sold by Defendants GSM prior to placing the subject hunting stand on the market for sale to consumers;

d. Failure to supply the subject hunting stand with adequate warnings and/or instructions to alert the user of the subject hunting stands inherent limitations and associated risks of injury;

e. Failure to supply the subject hunting stand with adequate written warnings and instructions, including assembly instructions;

f. Failing to warn users, including Plaintiff, of the risk that the subject hunting stand's welded seat post connection could suddenly fail after minimal and ordinary use;

g. Failure to exercise reasonable care in the assembly, fabrication, and manufacturing of the subject hunting stand;

h. Failing to design the subject hunting stand with a safety rail or alternative safe climbing hold to provide the user with a safe place to hold on to when descending from the hunting platform;

i. Supplying the subject hunting stand in a defective and unreasonably dangerous condition outside of reasonable consumer expectations subjecting the user to serious bodily harm when used for its ordinary, customary, foreseeable and/or intended manner;

j. Failure to exercise reasonable care in the design, manufacturing, distribution, packaging, marketing, testing, and inspection of the

14

subject hunting stand to ensure that it would perform in an expected and safe manner in its reasonably foreseeable, intended, and customary use;

k. Supplying the subject hunting stand without adequate warnings and/or instructions that would have reduced the likelihood of serious bodily injury caused when the subject hunting stand's seat post connection suddenly failed after minimal use;

l. Failure to properly and adequately evaluate and/or identify the hazards and risks of injury associated with the foreseeable, intended, ordinary, and customary use of the subject hunting stand prior to placing it into the stream of commerce to be purchased and used by consumers such as Plaintiff;

m. Failure to properly and effectively manage, oversee, and control the supply chain for the subject hunting stand to ensure that Defendants GSM's hunting stands were being sold, supplied, and packaged in a safe condition;

n. Failure to exercise reasonable care to ensure that the subject hunting stand, as sold and supplied to the end user, conformed with Defendants GSM's own internal quality and performance standards and specifications;

o. Manufacturing, designing, fabricating, supplying, and distributing the subject hunting stand without necessary safety features for the safe assembly, set-up, and use of the subject hunting stand;

p. Manufacturing, designing, supplying, distributing, and selling the subject hunting stand in an unreasonably dangerous condition due to the presence of improperly welded connections which resulted in the seat detaching from the base after limited, ordinary use;

q. Failing to exercise reasonable care in manufacturing, producing, assembling, fabricating, testing, and inspecting the subject hunting stand so as to ensure it was in a safe condition for ultimate users and free of unreasonably dangerous defects;

r. Distributing and supplying the subject hunting stand to be purchased

15

and used by consumers such as Plaintiff despite knowing that this model/type of hunting stand was subject to premature failure which Defendants GSM knew posed a grave risk of bodily harm to ultimate users of the product;

s.  Failure to develop and follow adequate and proper quality control measures to ensure that the subject hunting stand was supplied to Plaintiff in a safe condition and performed in a safe manner in its foreseeable and intended use as a hunting stand;

t.  Failure to exercise reasonable care in the selection of materials used in the design of the subject hunting stand to reduce the likelihood of the subject hunting stand failing and causing injury to end users, including Plaintiff;

u.  Failure to supply the subject hunting stand with a fall arrest system to protect against injuries to the user in the event the hunting stand failed or broke causing the seat to disconnect from the platform;

59.    As a result of the aforementioned carelessness and negligence of Defendants GSM, Plaintiff was caused to suffer the severe and painful injuries and incur damages as described above.

60.    In the alternative, the negligence, carelessness, and wrongdoing of Defendants GSM, as set forth above, substantially increased the risk that Plaintiff would be caused to suffer the injuries and damages he did in fact suffer, as set forth above in detail.

**WHEREFORE**, Plaintiff demands judgment against Defendants Good Sportsman Marketing, LLC, GSM, LLC, and GSM Outdoors Holdings, L.P. for damages in an amount exceeding the Arbitration limits of this Court, plus interest and costs, for all damages available under Pennsylvania law.

**COUNT II – STRICT LIABILITY**
**PLAINTIFF v. DEFENDANTS GSM, LLC, GOOD SPORTSMAN**
**MARKETING, LLC, AND GSM OUTDOORS HOLDINGS, L.P.**

61.     Plaintiff repeats and incorporates by reference all preceding paragraphs with the same force and effect as if set forth at length herein.

62.     Prior to December 8, 2023, Defendants GSM designed, manufactured, distributed, marketed, advertised, packaged, sold, and supplied the subject hunting stand, causing it to be placed into the stream of commerce to be purchased by consumers for personal use.

63.     Alternatively, Defendants GSM produced, packaged, distributed, marketed, and sold the subject hunting stand bearing their registered trade name / trademark "Muddy" and are therefore subject to liability in the same manner and to the same extent as though they had manufactured and designed the product.

64.     At all times relevant and material hereto, Defendants GSM were regularly engaged in the business of designing, developing, producing, manufacturing, distributing, selling, marketing, supplying, and/or otherwise introducing into the stream of commerce, consumer outdoor sporting and hunting goods, including the subject "Muddy" brand Horizon tripod hunting stand.

65.     Defendants GSM were and are suppliers of the subject hunting stand within the meaning of Section 402A of the Restatement (Second) of Torts and Pennsylvania products liability law.

17

66.    As the entities responsible for designing, manufacturing, distributing, selling, and/or supplying the subject hunting stand that caused Plaintiff's injuries, Defendants GSM are strictly liable to Plaintiff for all injuries and damages caused by their dangerous and defective product under Pennsylvania products liability law.

67.    The subject hunting stand was in the same or substantially same condition on December 8, 2023 as it was when it left the custody and control of Defendants GSM.

68.    As designed, manufactured, sold, and supplied by Defendants GSM, the subject hunting stand was defective, unsafe, and unreasonably dangerous.

69.    As designed, manufactured, and sold by Defendants GSM, the subject hunting stand was defective and not safe for its intended and reasonably foreseeable uses in that the seat post connection failed and caused Plaintiff to suffer serious injuries after limited, ordinary, and anticipated use

70.    As designed, manufactured, sold, and/or supplied by Defendants GSM, the subject hunting stand was defective, unsafe, and unreasonably dangerous relative to reasonable consumer expectations in that the danger of the subject hunting stand design as supplied and sold by Defendants GSM was unknowable and unreasonable to ordinary consumers such as Plaintiff.

71.    As designed, manufactured, sold, and/or supplied by Defendants GSM, the subject hunting stand was defective and unreasonably dangerous in that there

existed technologically feasible safe alternative designs which would have eliminated or greatly reduced the risk of grave bodily injury without compromising the product's function or utility.

72. Defendants GSM designed, manufactured, sold, and supplied the subject hunting stand in an unsafe and defective condition in that it lacked safety components and design features necessary to make it safe for use and/or included components that made it unsafe for use, including, but not limited to, proper, safe, and secure structural connections, the lack of safe and suitable component for the user to hold onto while descending from the stand, and/or utilizing defective and inadequate components and materials that were not suitable or capable of withstanding ordinary, anticipated, and expected use of the product.

73. As designed, manufactured, sold, and/or supplied by Defendants GSM, the subject hunting stand was defective, dangerous, and unsafe in that a reasonable consumer would conclude that the probability and seriousness of the harm posed by the subject hunting stand design outweighed the burden of available precautions which would have eliminated or greatly reduced the risk of severe bodily injury posed by the product's design.

74. As manufactured, sold, and/or supplied by Defendants GSM, the subject hunting stand was defective, unreasonably dangerous, and unsafe to ultimate users, including Plaintiff, because it lacked adequate warnings and/or instructions

19

necessary to prevent or reduce the risk of harm to consumers.

75. Defendants GSM are strictly liable to Plaintiff under Pennsylvania law because the grave and foreseeable risks of serious bodily injury posed by the subject hunting stand could have been reduced and/or eliminated by the provision of adequate warnings and/or instructions, the omission of which also rendered the subject hunting stand unreasonably dangerous.

76. The defective and unreasonably dangerous condition of the subject hunting stand was a direct and factual cause of Plaintiff's injuries and damages described at length above.

77. Additionally, and/or in the alternative, the subject hunting stand was defective in that it failed to perform in a safe and expected manner with normal and anticipated use and/or failed to conform with other products of the same model and kind manufactured and sold by Defendants.

78. As a direct and proximate result of the defective condition of the subject hunting stand, as designed, manufactured, sold, and supplied by Defendants GSM, Plaintiff was caused to suffer the injuries and damages set forth above.

79. Alternatively, the defective and unreasonably dangerous condition of the subject hunting stand, as sold and supplied by Defendants GSM, substantially increased the risk that Plaintiff would suffer the injuries and damages he did in fact suffer.

20

**WHEREFORE**, Plaintiff demands judgment against Defendants Good Sportsman Marketing, LLC, GSM, LLC, and GSM Outdoors Holdings, L.P. for damages in an amount exceeding the Arbitration limits of this Court, plus interest and costs, for all damages available under Pennsylvania law.

## COUNT III – BREACH OF WARRANTIES
## PLAINTIFF v. DEFENDANTS GSM, LLC, GOOD SPORTSMAN MARKETING, LLC, AND GSM OUTDOORS HOLDINGS, L.P.

80.    Plaintiff repeats and incorporates by reference all preceding paragraphs with the same force and effect as if set forth at length herein.

81.    In manufacturing, producing, distributing, marketing, advertising, selling, and/or otherwise placing the subject hunting stand into the stream of commerce, Defendants GSM made express and implied warranties that the subject hunting stand was merchantable, fit, suitable, and safe for the ordinary and particular purposes for which it was supplied and free of dangerous defects.

82.    Prior to and at the time of selling and/or supplying the subject hunting stand, Defendants GSM, individually and collectively, expressly represented and warranted that the subject hunting stand was effective, proper, fit, suitable, and safe for its intended use and of merchantable quality.

83.    Prior to and at the time of selling and/or supplying the subject hunting stand, Defendants GSM, individually and collectively, made implied warranties that the subject hunting stand was reasonably fit for the purposes for which it was sold

and that it was of merchantable quality.

84.    In selling and supplying the subject hunting stand, Defendants GSM expressly represented and warranted that the subject hunting stand was "designed with hunters in mind."

85.    Defendants GSM represented and warranted that the subject hunting stand "offers the space and comfort needed for hardcore dawn-to-dusk hunting; durable and sturdy, it gives you a stable, open position from which to take your trophy shot."

86.    Defendants GSM, in selling and supplying the subject hunting stand provided users with "enhanced performance needed for fruitful results."

87.    Defendants GSM expressly represented to consumers and customers on their gomuddy.com website, that its products, including the subject hunting stand, "are specified to our quality standards and are inspected before they leave this location."

88.    The representations and warranties set forth in the preceding paragraphs formed the basis of the bargain for the sale of the subject hunting stand and were relied upon in purchasing the subject hunting stand.

89.    In truth and in fact, the above representations of Defendants GSM were false.

90.    Defendants GSM breached express and implied warranties in that the

subject hunting stand was not fit and safe for the ordinary and particular purposes for which it was supplied, was defective and not in merchantable condition, and these breaches were a direct factual and proximate cause of Plaintiff's injuries and resulting damages.

91.     In the alternative, the aforementioned breaches of express and implied warranties made by Defendants GSM substantially increased the risk that Plaintiff would be caused to suffer the injuries and damages he did in fact suffer, as set forth in detail above.

**WHEREFORE**, Plaintiff demands judgment against Defendants Good Sportsman Marketing, LLC, GSM, LLC, and GSM Outdoors Holdings, L.P. for damages in an amount exceeding the Arbitration limits of this Court, plus interest and costs, for all damages available under Pennsylvania law.

<u>**COUNT IV – NEGLIGENCE**</u>
<u>**PLAINTIFF v. DEFENDANT WAL-MART STORES EAST, LP**</u>

92.     Plaintiff repeats and incorporates by reference all preceding paragraphs with the same force and effect as if set forth herein at length.

93.     Defendant Walmart distributed, sold, and supplied the subject hunting stand with the expectation that it purchased and used as a recreational hunting stand by consumers such as Plaintiff.

94.     At all times relevant and material hereto, Defendant Walmart, having undertaken to distribute, market, sell, and supply the subject hunting stand, had a

23

duty to exercise reasonable care to ensure the subject hunting stand was reasonably safe for its intended uses and reasonably foreseeable uses.

95.    Prior to supplying the subject hunting stand, Defendant Walmart knew that it should never needlessly endanger users of the subject hunting stand.

96.    In selling and supplying the subject hunting stand for personal use by consumers, Defendant Walmart knew that it had a duty to ultimate users of the hunting stand, including Plaintiff, to reduce or eliminate potential hazards of the subject product to the greatest extent reasonably possible.

97.    In marketing, distributing, and selling the subject hunting stand, Defendant Walmart knew that supplying an elevated hunting stand with improper welded connections would expose consumers such as Plaintiff to an unreasonable risk of serious bodily injury.

98.    In marketing, distributing, and selling the subject hunting stand, Defendant Walmart knew that ultimate users would be exposed to unreasonable risk of bodily injury in the event there were defects in the hunting stand's welded connections, design, or fabrication that could lead to the seat post connection failing and detaching from the base.

99.    In marketing, distributing, and selling the subject hunting stand, Defendant Walmart knew or should have known it would be necessary to exercise reasonable care in selecting, supplying, and/or inspecting the subject hunting stand

24

to ensure that it was safe for its expected and intended use(s) as an elevated platform and seat for consumers to hunt wild game.

100.   At all times relevant and material hereto, Defendant Walmart knew that it was important to supply the subject hunting stand with adequate warnings, product safety information, and/or instructions to prevent or reduce, to the greatest extent possible, the likelihood of serious bodily harm or injury to end users such as Plaintiff.

101.   Prior to selling and supplying the subject hunting stand, Defendant Walmart knew and recognized that supplying a hunting stand that lacked suitable and adequate materials and/or construction to withstand normal and expected use would expose ultimate users of the subject hunting stand to grave risk of serious bodily injury.

102.   Defendant Walmart had no reason to believe or expect that ultimate users of the subject hunting stand would recognize or appreciate the unreasonably dangerous condition of the product as sold and supplied by Defendant Walmart.

103.   As a supplier of the subject hunting stand, Defendant Walmart had a duty to exercise reasonable care in the inspection, testing, selection, and sale of the product so as to eliminate or reduce, to the fullest extent possible, the risk of serious injuries to consumers and ultimate users of the product.

104.   Notwithstanding same, Defendant Walmart supplied the subject hunting stand in an unreasonably dangerous and defective condition that caused

25

Plaintiff to suffer serious injuries when the hunting stand seat post connection suddenly failed after only minimal, intended, ordinary, and expected use.

105.    The aforementioned injuries and damages suffered by Plaintiff, as set forth above, were directly, factually, and proximately caused by the negligence, carelessness, and wrongdoing of Defendant Walmart, including the following conduct, acts, and/or omissions:

a.  Failure to exercise reasonable care in testing, inspecting, packaging, marketing, distributing, selling, and/or otherwise supplying the subject hunting stand such that it was in a safe condition for ultimate consumers;

b.  Packaging, producing, distributing, selling, and/or otherwise supplying the subject hunting stand in a defective and/or unreasonably dangerous condition;

c.  Failing to exercise reasonable care in testing and inspecting the subject hunting stand for quality control, safety, and consistency with internal product standards for products of a similar kind manufactured and sold by Defendants GSM and/or Defendant Walmart prior to allowing the subject hunting stand to be sold to consumers;

d.  Failure to supply the subject hunting stand with adequate warnings and/or instructions to warn end users of the product's inherent limitations and associated risks of injury;

e.  Supplying the subject hunting stand in a defective and unreasonably dangerous and defective condition beyond reasonable and ordinary consumer expectations;

f.  Failure to exercise reasonable care in the distribution, packaging, marketing, testing, sale, and inspection of the subject hunting stand to ensure that it would perform in an expected and safe manner in its reasonably foreseeable, intended, and customary use;

26

g. Supplying the subject hunting stand without adequate warnings and/or instructions that would have prevented or reduced the likelihood of serious bodily injury;

h. Supplying the subject hunting stand without adequate and proper written warnings and instructions, including assembly instructions, to ensure the subject hunting stand could be safely used for its intended purposes;

i. Failure to properly and adequately evaluate and/or identify the hazards and risks of injury associated with the foreseeable, intended, ordinary, and customary use of the subject hunting stand prior to allowing it to be purchased and used by consumers such as Plaintiff;

j. Failure to properly and effectively manage, oversee, and/or control the supply chain for the subject hunting stand to ensure that the subject hunting stand was supplied to the end user in a safe condition and free of dangerous defects;

k. Failure to exercise reasonable care to ensure that the subject hunting stand conformed with Defendant Walmart's internal quality and performance standards and specifications;

l. Selling, supplying, and distributing the subject hunting stand without necessary design and construction features to ensure the subject hunting stand was safe and capable of withstanding normal and anticipated use;

m. Selling, supplying, and distributing the subject hunting stand in an unreasonably dangerous condition due to the presence of improper welded connections that led to the stand's premature deterioration and failure after only limited and foreseeable use;

n. Failing to exercise reasonable care in selling and supplying the subject hunting stand such to ensure it was in a safe condition for ultimate users and free of unreasonably dangerous defects;

o. Distributing, marketing, selling, and supplying the subject hunting stand to consumers despite knowing that the model/type of hunting stand's potential to prematurely fail and break presenting a grave risk

27

of bodily harm to ultimate users of the product;

p.  Failure to develop and follow adequate and proper quality control measures to ensure that the subject hunting stand was supplied in a safe condition and performed in a safe manner in its foreseeable and intended use as a hunting stand;

q.  Failure to exercise reasonable care to ensure that the subject hunting stand was reasonably safe for its ordinary and foreseeable uses prior to allowing it to be sold to and used by consumers;

106.  As a direct and proximate result of the aforementioned carelessness and negligence of Defendant Walmart, Plaintiff was caused to suffer severe and painful injuries and incur damages as described above.

107.  In the alternative, the negligence, carelessness, and wrongdoing of Defendant Walmart, as set forth above, substantially increased the risk that Plaintiff would be caused to suffer the injuries and damages he did in fact suffer, as set forth above in detail.

**WHEREFORE**, Plaintiff demands judgement in his favor and against Defendant Walmart for damages in an amount exceeding the Arbitration limits of this Court, plus interest and costs, and for all damages available under Pennsylvania law.

### COUNT V – STRICT LIABILITY
### PLAINTIFF v. DEFENDANT WAL-MART STORES EAST, LP

108.  Plaintiff repeats and incorporates by reference all preceding paragraphs with the same force and effect as if set forth at length herein.

28

109.   Prior to December 8, 2023, Defendant Walmart distributed, marketed, advertised, packaged, sold and/or supplied the subject hunting stand, causing it to be placed into the stream of commerce to be purchased by consumers for personal use.

110.   At all times relevant and material hereto, Defendant Walmart was regularly engaged in the business of distributing, selling, marketing, and supplying consumer outdoor sporting and hunting goods, including the subject hunting stand.

111.   Defendant Walmart was and is a supplier of the subject hunting stand within the meaning of Section 402A of the Restatement (Second) of Torts and Pennsylvania products liability law.

112.   As the entity responsible for distributing, selling, and/or supplying the subject hunting stand that caused Plaintiff's injuries, Defendant Walmart is strictly liable to Plaintiff for all injuries and damages caused by the dangerous and defective product under Pennsylvania products liability law.

113.   The subject hunting stand was in the same or substantially same condition on December 8, 2023 as it was when it left the custody and control of Defendant Walmart.

114.   As sold and supplied by Defendant Walmart, the subject hunting stand was unreasonably dangerous, defective, and unsafe for its intended and reasonably foreseeable uses in that it failed, broke, and caused injury to Plaintiff despite limited, customary, and foreseeable use.

115. As distributed, sold, and/or supplied by Defendant Walmart, the subject hunting stand was defective and unreasonably dangerous relative to reasonable consumer expectations in that it failed to perform in a safe manner with limited, ordinary, and expected use.

116. The danger of the subject hunting stand design as supplied and sold by Defendant Walmart was unknowable and unreasonable to ordinary consumers such as Plaintiff.

117. As designed, manufactured, sold, and/or supplied by Defendant Walmart, the subject hunting stand was defective, unreasonably dangerous, and unsafe in that a reasonable consumer would conclude that the probability and seriousness of the harm posed by the subject hunting stand design outweighed the burden of available precautions which would have eliminated or greatly reduced the risk of severe injury posed by the product's design.

118. As sold and/or supplied by Defendant Walmart, the subject hunting stand was defective and unreasonably dangerous in that there existed technologically feasible safe alternative designs which would have eliminated or greatly reduced the risk of grave bodily injury without compromising the product's function or utility.

119. Defendant Walmart sold and supplied the subject hunting stand in an unsafe and defective condition in that it lacked safety components and safety features necessary to make it safe for use and/or included components that made it unsafe for

30

use, including, but not limited to, the lack of proper, safe, and secure connections of the hunting stand's structural parts, the lack of adequate and safe design feature to provide a safe place for the user to hold onto while descending from the hunting stand, the lack of fall arrest equipment, and utilizing defective and inadequate components and materials that were not suitable or capable of withstanding ordinary, anticipated and expected use of the product.

120.   As sold and/or supplied by Defendant Walmart, the subject hunting stand was defective, unreasonably dangerous, and unsafe to ultimate users, including Plaintiff, because it lacked adequate warnings and/or instructions necessary to prevent or reduce the risk of harm to consumers.

121.   Defendant Walmart is strictly liable to Plaintiff under Pennsylvania law because the grave and foreseeable risks of serious bodily injury posed by the subject hunting stand's design could have been reduced and/or eliminated by the provision of adequate warnings and/or instructions, the omission of which also rendered the subject hunting stand defective and unreasonably dangerous.

122.   The defective and unreasonably dangerous condition of the subject hunting stand was a direct and factual cause of Plaintiff's injuries and damages, as described at length above.

123.   Additionally, and/or in the alternative, the subject hunting stand was defective in that it failed to perform in a safe and expected manner with normal and

intended use and/or failed to conform with products of the same model and kind manufactured and sold by Defendant Walmart and Defendants GSM, and was a direct and proximate cause of Plaintiff's injuries and damages described herein.

124. Defendant Walmart is strictly liable for Plaintiff for his injuries and damages caused by the defective and unreasonably dangerous hunting stand pursuant to Pennsylvania products liability law.

125. As a direct and proximate result of the defective design and unreasonably dangerous condition of the subject hunting stand, as sold and supplied by Defendant Walmart, Plaintiff was caused to suffer the painful injuries and damages described herein

126. Alternatively, the defective design and unreasonably dangerous condition of the subject hunting stand, as sold and supplied by Defendant Walmart, substantially increased the risk that Plaintiff would suffer the injuries and damages he did in fact suffer.

**WHEREFORE**, Plaintiff demands judgment against Defendant Walmart for damages in an amount exceeding the Arbitration limits of this Court, plus interest and costs, for all damages available under Pennsylvania law.

<u>**COUNT VI– BREACH OF WARRANTIES**</u>
<u>**PLAINTIFF v. DEFENDANT WAL-MART STORES EAST, LP**</u>

127. Plaintiff repeats and incorporates by reference all preceding paragraphs with the same force and effect as if set forth at length herein.

32

128. In distributing, marketing, advertising, selling, and/or otherwise placing the subject hunting stand into the stream of commerce to be purchased by consumers, Defendant Walmart made express and implied warranties that the subject hunting stand was merchantable, fit, suitable, and safe for the ordinary and particular purposes for which it was supplied, and that it was free from dangerous defects.

129. Prior to and at the time of selling and/or supplying the subject hunting stand, Defendant Walmart expressly represented and warranted that the subject hunting stand was effective, proper, fit, and safe for its intended uses and of merchantable quality.

130. Prior to and at the time of selling and/or supplying the subject hunting stand, Defendant Walmart made implied warranties that the subject hunting stand was reasonably fit for the purposes for which it was sold and that it was of merchantable quality.

131. The representations and warranties set forth in the preceding paragraphs formed the basis of the bargain for the sale of the subject hunting stand and were relied upon by Plaintiff and the purchaser in purchasing the subject hunting stand.

132. In truth and in fact, the above representations of Defendant Walmart were false.

133. Defendant Walmart breached express and implied warranties in that the subject hunting stand it sold and supplied was not fit and safe for the ordinary and particular purposes for which it was supplied, and was defective and not in merchantable condition, and these breaches were a direct factual and proximate cause of Plaintiff's injuries and resulting damages described herein.

134. In the alternative, the aforementioned breaches of express and implied warranties made by Defendant Walmart substantially increased the risk that Plaintiff would be caused to suffer the injuries and damages he did in fact suffer, as set forth in detail above.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages in an amount exceeding the Arbitration limits of this Court, plus interest and costs of suit.

## Jury Demand

Plaintiff hereby demands a jury trial on all issues so triable.

WHEREFORE, Plaintiff prays that upon final judgment, he may have and recover: trial by jury which is hereby demanded: judgment against Defendant Good Sportsman Marketing, LLC; judgment against Defendant GSM, LLC; judgment against Defendant GSM Outdoors Holdings, L.P.; judgment against Defendant Wal-Mart Stores East, LP; and pre-judgment interest as allowed by law; post-judgment interest as allowed by law; actual damages; cost of suit; and such

other relief at law to which Plaintiff may be justly entitled.


Respectfully submitted,


**GALFAND BERGER, LLP**


BY:   _/s/ Brooke J. Elmi_____
BROOKE J. ELMI, ESQUIRE
PA Attorney ID No. 325999
1835 Market Street, Suite 2710
Philadelphia, Pennsylvania 19103
Tel: (215) 665-1600
Fax: (215) 564-2262
belmi@galfandberger.com
DATED:11/17/2025     ***Attorney for Plaintiff***

**VERIFICATION**

I, Allen Price, hereby affirm that the following facts are correct:

I am the Plaintiff in the foregoing action and the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in preparation of my lawsuit. The language of the Complaint is that of counsel and not mine. I have read the Complaint and to the extent that the Complaint is based upon information which I have given to my counsel, it is true and correct to the best of my knowledge, information and belief. To the extent that the content of the Complaint is that of counsel, I have relied upon counsel in making this Verification. I hereby acknowledge that the facts set forth in the aforesaid Complaint are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

11/1/2025
Date

Allen Price